

1234 Camino del Mar
Del Mar, CA 92014
Phone: 619.762.1910
Fax: 724.656.1556
www.lynchcarpenter.com

June 20, 2024

**VIA: CM/ECF**

Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York

    Re:    *Demetra Binder, et al., v. Premium Brands Opco LLC*, No. 1:23-cv-03939-NRB

Dear Judge Buchwald:

We are writing on behalf of Plaintiffs Binder, Waldner, and Calcagno ("Plaintiffs"), pursuant to Rule 2(B) of Your Honor's Individual Practice Rules to request a pre-motion conference to discuss Plaintiffs' anticipated motion pursuant to Fed. R. Civ. P. 15 for leave to amend their Second Amended Complaint ("SAC") (ECF No. 24). The proposed Third Amended Complaint ("TAC") would amend allegations relevant to Plaintiff Waldner's claims under the Deceptive Acts and Practices Act, N.Y. Gen. Bus. L. § 349, and the New York False Advertising Act, N.Y. Gen. Bus. L. § 350. Plaintiffs do not seek to amend Plaintiff Binder's claims under New Jersey law.

Plaintiffs commenced this action on May 10, 2023, and filed a first amended complaint ("FAC") on May 30, 2023, for the sole purpose of naming the correct entity defendant. ECF Nos. 1, 7. On August 25, 2023, Plaintiffs filed the SAC following the Court's consideration of the parties' pre-motion conference letters in connection with Defendant's anticipated motion to dismiss the FAC. ECF Nos. 22-24. Unlike the Court's recent Memorandum and Order (the "Order"), the Court's Order on August 11, 2023, giving Plaintiffs leave to amend the FAC, did not analyze Plaintiffs' allegations except to say that to "remind[] [Plaintiffs] that if, consistent with Rule 11, they can assert additional allegations to cure any alleged deficiencies raised by defendant's letter, it would be in the best interest of both the parties and the Court for plaintiffs to assert them now, before briefing on the proposed motions." ECF No. 23 at 1. On October 27, 2023, Defendant moved to dismiss the SAC and the Court issued the Order on June 11, 2024, sustaining Plaintiffs' California claims and dismissing the New Jersey and New York claims, because Plaintiffs' injury "analysis says nothing about the real market value of defendant's products or the price those products would have sold for absent the allegedly false reference price." Order at 27. *See* ECF Nos. 30-32, 37.

If given leave to amend, Plaintiffs are confident that they can adequately plead that "on account of a materially misleading practice, [Plaintiff Waldner] purchased a product and did not receive the full value of her purchase." Order at 18. First, Plaintiffs can provide greater detail about the regression analyses performed by their expert to quantify the "objective measure" of Defendant's alleged overcharge." Order at 26 (internal citation omitted). While Plaintiffs will still allege that the overcharge (price premium) is comprised of "the difference between the sale price with the reference price and the 'market sale price that the products would have commanded without [d]efendant's [alleged] deception[,]'" *id.* (citing SAC ¶ 69), Plaintiffs can supply greater detail about the regression performed, including greater information about the *other* variables affecting price that it isolated and accounted for (beyond the reference price)—so as to plausibly allege "the real market value of defendant's products or the price those products would have sold for absent the allegedly false reference price." *Id.* at 27.



1234 Camino del Mar
Del Mar, CA 92014
Phone: 619.762.1910
Fax: 724.656.1556
www.lynchcarpenter.com

Plaintiffs interpret the Court's Order to suggest that Plaintiffs measured *only* the correlative relationship between Defendant's reference and sales prices. *See* Order at 27 ("Indeed, even a cursory glance at its methodology reveals that the analysis only examines the relationship between defendant's reference and sale prices.") (citing SAC ¶¶ 65-66).[1] However, Plaintiffs respectfully disagree with this conclusion and respectfully ask that they be given the opportunity to allege in greater detail *how* their analysis accounted for and held "all other (relevant) factors fixed" so as to measure the *causal* relationship between reference price and selling price.[2] *See* Jeffrey M. Wooldridge, *Econometric Analysis of Cross Section and Panel Data* 3-4 (2002). While Plaintiffs certainly agree that correlation does not mean causation, *see* Order at 27, there is an abundance of authority providing that a properly implemented regression analysis—as was performed here—can reliably estimate the prices that would have occurred but-for the alleged misconduct. Wooldridge, *supra* at 3-4[3] provides that:

> The notion of ceteris paribus—that is, holding all other (relevant) factors fixed—is at the crux of establishing a ***causal*** relationship. Simply finding that two variables are correlated is rarely enough to conclude that a change in one variable causes a change in another. This result is due to the nature of economic data: rarely can we run a controlled experiment that allows a simple correlation analysis to uncover causality. Instead, we can use econometric methods to effectively hold other factors fixed… A first course in econometrics teaches students how to apply multiple regression analysis to estimate ceteris paribus effects of explanatory variables on a response variable.

Accounting for the "ceteris paribus" is precisely what Plaintiffs did—and can expand upon in a TAC—in their regression. That is, the regression obtained an estimate of the relationship between reference price and selling price *while accounting for other factors that influence selling price*, and then predicting the selling price that would have occurred in the absence of the alleged misconduct with the difference between the selling price and but-for price being the price premium. The proposed additional regression allegations will thus more thoroughly establish the quantitative connection between reference and selling prices by using Defendant's own data, and accounting for all other (available) relevant factors, in order to estimate of the value of the products received. A more thorough regression will be performed once Plaintiffs receive discovery on other non-public factors affecting sales price known only to Defendant.

---

[1] *See also* Order at 28 ("What plaintiffs' theory fails to acknowledge is that there are myriad factors that may influence defendant's pricing, especially for discretionary purchases in a competitive market like the one at issue here.").

[2] As it stands, the SAC only makes passing mention of other factors affecting price that were accounted for by the regression. *See* ¶ 66 ("The second model adds additional control variables for specific product characteristics (e.g., pants vs shorts vs leggings, etc.) and finds a regression coefficient of 0.7299."). This can be improved in the TAC.

[3] *See also* Weil et al., *Litigation Services Handbook: The Role of the Financial Expert* 25 (6th ed. 2017) ("Regression analysis applies a statistical technique to develop an equation depicting the relation among variables and then uses that equation for prediction. For example, an expert who needs to predict the sales that a firm would have made but for the defendant's actions could use a regression analysis that models the relation between the firm's sales and other relevant factors (e.g., total industry sales) over a control period preceding the defendant's actions to predict but-for sales in the absence of those actions.").



1234 Camino del Mar
Del Mar, CA 92014
Phone: 619.762.1910
Fax: 724.656.1556
www.lynchcarpenter.com

Finally, the Court's Order also states that "a future plaintiff presumably could allege that similar quality products from other retailers were sold without reference prices and routinely cost less [to demonstrate an objective market value the products absent the misconduct]." Order at 31.[4] Thus, despite the exclusive nature of Defendant's outlet products, SAC ¶ 19, Plaintiffs are currently investigating and can provide examples of such "similar qualify products" being sold "without reference prices and routinely costing less" to support their establishment of a base market price for Defendant's outlet products in the but-for world in which they are not discounted from a false reference price. *Id.* Attached as **Exhibit A** is a sample of this ongoing work performed to date.

Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." In the absence of any "apparent or declared reason" (such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in the pleading by prior amendments, or if the amendment or supplementation would be futile), then the leave sought should, as the rule requires, be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dluhos v. Floating and Abandoned Vessel Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998). Here, Plaintiffs have not unduly delayed bringing the proposed TAC; the Order represents the Court's first input in this matter on the allegations required to meet the injury requirement for the New York claims, and this is the first instance in which Plaintiffs have sought to move for leave to amend the operative complaint. Nor will Defendant suffer prejudice if Plaintiffs are given leave to amend: this action is in its initial stage and no discovery has taken place. Further, the proposed TAC will not alter Plaintiffs' core factual allegations, such as when and where their purchases were made or what representations they relied on.

Further, Plaintiffs' proposed amendments would not be futile. An amended complaint is considered "futile" when the new claim would not withstand a motion to dismiss under Rule 12(b)(6). *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). "If, however, the party seeking to amend has at least colorable grounds for relief, justice ... require[s] that its motion be granted." *Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, No. 12 CIV. 4221 LAP DF, 2013 WL 3956377, at *5 (S.D.N.Y. July 26, 2013) (internal quotations omitted). Indeed, in *Austin-Spearman v. AMC Network Ent. LLC*, a case before this Court, Your Honor even remarked that "as the law regarding leave to amend is very forgiving ... we must grant [plaintiff's] request." 98 F. Supp. 3d 662, 671 (S.D.N.Y. 2015) (Buchwald, J.) (citation omitted). Thus, relief was granted despite the Court's "great reluctance … [and] remain[ing] skeptic[ism] that [plaintiff] will be able to state a claim even after amendment." *Id.*

Accordingly, Plaintiffs respectfully request a pre-motion conference to discuss their anticipated motion for leave to amend.

                                              Respectfully submitted,

Dated: June 20, 2024                               **LYNCH CARPENTER, LLP**

                                            By: */s/ Scott G. Braden*
                                                Scott G. Braden (*pro hac vice*)

---

[4] Plaintiffs interpret this language as expressly leaving the door open for false discount case pleadings in the Second Circuit. *See also* Order at 30 ("[T]he Court does not believe the consequences of our holding are so dire.").